**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **ANOUSH S.,**[1] | Case No. 3:20-cv-00588-IM |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **COMMISSIONER, SOCIAL SECURITY ADMINISTRATION**, | |
| Defendant. | |

Kevin Kerr, KERR ROBICHAUX & CARROLL, P.O. Box 14490, Portland, Oregon 97293. Attorney for Plaintiff.

Scott Erik Asphaug, Acting United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, Oregon 97204; Jacob Phillips, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, Washington 98104. Attorneys for Defendant.

**IMMERGUT, District Judge.**

Plaintiff, Anoush S., seeks review of a final decision of the Commissioner of Social

Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB")

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

and Title XVI, Supplemental Security Income ("SSI"). For the following reasons, this Court
AFFIRMS the Commissioner's decision.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper
legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see
also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means
"more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec.
Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039
(9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate
to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

If the evidence is "susceptible to more than one rational interpretation," the
Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th
Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's
interpretation is a rational reading of the record, and this Court may not substitute its judgment
for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193,
1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may
not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495
F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th
Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the
Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554
F.3d at 1226.

# BACKGROUND

## A.  Plaintiff's Application

Plaintiff was born on June 26, 1969. AR 43. Plaintiff alleges disability related to various physical and mental conditions including depression and chronic pain. AR 309. She has the equivalent of a high school degree from Ukraine and attended college in the United States. AR 44. Her current claim was protectively filed on March 29, 2017. AR 15. The claim was first denied on August 25, 2017, and, upon reconsideration, on February 8, 2018. *Id.* Plaintiff requested review of these denials, and the Administrative Law Judge ("ALJ"), Sue Leise, held an administrative hearing on August 28, 2019. AR 38. The ALJ then issued a decision denying her applications for benefits on October 30, 2019. AR 12–29. The Appeals Council declined review on February 5, 2020. AR 1–6. Plaintiff then appealed to this Court.

Previously, Plaintiff had protectively filed an application for benefits on October 2, 2012. AR 73. ALJ Rudy M. Murgo denied her application for benefits on May 18, 2016. AR 87. On November 7, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. AR 94–97. Plaintiff chose not to appeal to a district court. AR 58. For both applications, the ALJs considered an alleged onset of disability date of August 1, 2010. AR 18, 75.

## B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

1.    Is the claimant performing "substantial gainful activity?" 20 C.F.R.
      §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
      significant mental or physical duties done or intended to be done for pay
      or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing
      such work, she is not disabled within the meaning of the Act. 20 C.F.R.
      §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing
      substantial gainful activity, the analysis proceeds to step two.

2.    Is the claimant's impairment "severe" under the Commissioner's
      regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An
      impairment or combination of impairments is "severe" if it significantly
      limits the claimant's physical or mental ability to do basic work activities.
      20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death,
      this impairment must have lasted or be expected to last for a continuous
      period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the
      claimant does not have a severe impairment, the analysis ends. 20 C.F.R.
      §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe
      impairment, the analysis proceeds to step three.

3.    Does the claimant's severe impairment "meet or equal" one or more of the
      impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so,
      then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii),
      416.920(a)(4)(iii). If the impairment does not meet or equal one or more of
      the listed impairments, the analysis continues. At that point, the ALJ must
      evaluate medical and other relevant evidence to assess and determine the
      claimant's "residual functional capacity" ("RFC"). This is an assessment
      of work-related activities that the claimant may still perform on a regular
      and continuing basis, despite any limitations imposed by his or her
      impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e),
      416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis
      proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC
      assessment? If so, then the claimant is not disabled. 20 C.F.R.
      §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform
      his or her past relevant work, the analysis proceeds to step five.

> 5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140–41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953–54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

At step one of the sequential evaluation process, the ALJ found that Plaintiff did not engage in substantial gainful activity since the alleged onset date of August 1, 2010. AR 18.

At step two, the ALJ found the following severe impairments: "bipolar depression, anxiety, posttraumatic stress disorder (PTSD), tendonitis and bursitis of the right shoulder, and bursitis and piriformis syndrome of the right hip/pelvic area." *Id.*

At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 19. The ALJ then

determined Plaintiff's RFC. AR 21. The ALJ found her capable of performing medium work as

defined in 20 C.F.R. §§ 404.1567(c), 416.967(c), except that:

> [S]he can lift/carry twenty-five pounds frequently and fifty pounds occasionally, she can stand and/or walk for six hours in an eight-hour workday, and she can sit for six hours in an eight-hour workday. She can occasionally climb ladders, ropes, or scaffolds, frequently balance, stoop, kneel, crouch, and crawl, and is limited to occasional overhead reaching with the right upper extremity. She must not work around hazards such as unprotected heights and dangerous machinery. She is able to remember, understand, and carry out routine, repetitive tasks that could be learned within thirty days or by demonstration consistent with occupations of SVP 1 or 2 and the GED level should not exceed the level 2. She is able to perform simple, work-related decisions with few, if any, workplace changes. She should have only occasional, superficial interaction with the general public, such as greetings and conversations but nothing in-depth such as negotiation or mediation tasks. She is able to work in proximity to coworkers but cannot perform tasks that require teamwork. She should have only occasional interaction with supervisors.

AR 21–22.

At step four, the ALJ found that Plaintiff has no past relevant work. AR 27.

At step five, the ALJ considered the claimant's age, education, work experience, and

RFC, and concluded that jobs exist in significant numbers in the national economy that Plaintiff

could perform. AR 27. The ALJ relied on vocational expert testimony and the record as a whole

to find Plaintiff capable of other work, identifying the representative occupations of industrial

cleaner, agricultural packer, and stores laborer.[2] AR 28. Finally, the ALJ found that Plaintiff has

not been under a disability from August 1, 2010, through the date of the decision. *Id.*

---

[2] An ALJ may rely on the Medical-Vocational Guidelines found at 20 C.F.R. Part 404, Subpart P, Appendix 2, or on the testimony of a vocational expert. *Tackett*, 180 F.3d at 1101. "[A] vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560(b)(2).

PAGE 6 – OPINION AND ORDER

**DISCUSSION**

**A. The ALJ Did Not Err in Rejecting the Opinions of Nathaniel Holt, ARNP and Dr. Georgia Wilcox, PsyD.**

Plaintiff asserts that the ALJ erred in rejecting the opinions of Nathaniel Holt, the treating advanced registered nurse practitioner ("ARNP"), because the ALJ misapplied new medical opinions regulations and her findings were not supported by substantial evidence. Plaintiff also argues that the ALJ failed to give specific and legitimate reasons for rejecting the opinion of Dr. Georgia Wilcox, PsyD.

**1. Nathaniel Holt, ARNP**

Plaintiff asserts that the ALJ erred in rejecting the opinions of ARNP Nathaniel Holt because she misapplied the regulations, and her findings were not supported by substantial evidence. ARNP Holt gave two opinions. First, in a letter dated April 17, 2019, he stated that Plaintiff was "struggling with a severe and persistent mental illness" that is "chronic and recurrent in nature and is directly contributing to her inability to establish and maintain employment." AR 1402. Second, in a longer evaluation dated May 8, 2019, ARNP Holt explained that her condition resulted in areas of "marked" and "extreme" limitations. AR 1399.

Plaintiff challenges the ALJ's rejection of ARNP Holt's April 2019 opinion because the ALJ found it "d[id] not constitute a medical opinion and thus does not require a detailed analysis." AR 25. As the regulations make clear, for claims filed on or after March 27, 2017, an ALJ "will articulate . . . how persuasive we find all of the medical opinions . . . in your case record." 20 C.F.R. § 404.1520c(b). While Plaintiff claims that ARNP Holt's April 2019 statement met the regulation's definition of a "medical opinion" and should have been given more consideration, this Court is not persuaded.

The term "medical opinions" is defined in the applicable regulations as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in various abilities including one's ability to perform the physical, mental, and other demands of work activities, and to adapt to environmental conditions. 20 C.F.R. §§ 404.1513(a), 416.913(a). Contrary to the regulations, ARNP Holt's statement did not explain what Plaintiff could still do despite her impairments and did not describe what abilities were affected by her impairment-related limitations beyond just "her inability to establish and maintain employment." AR 1402. Plaintiff urges this Court to ignore the inadequacies in ARNP Holt's statement by filling the gaps with the "specific facts at hand." *See* ECF 15 at 3. But this Court cannot ignore the clear textual requirements of this regulation simply because Plaintiff claims it would result in an "implausible application of the regulation." ECF 15 at 3; *Malbog v. Kijakazi*, No. 20-00500 JAO-RT, 2021 WL 4750574, at *8 (D. Haw. Oct. 12, 2021) (holding that the ALJ was not required to consider a medical provider's letter when the letter failed to describe what the plaintiff *could still do despite his impairments*).

Further, an ALJ rejecting on these grounds would not be in error because an ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). While ARNP Holt noted that Plaintiff had been under his psychiatric care since November 2016, his one-page letter did not cite any medical records in support of his opinion. AR 1402. Nor did his letter mention if he had reviewed Plaintiff's full medical history and records. *Id.* This lack of detail proves fatal to Plaintiff's argument. *See Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) ("An ALJ is not required to take medical opinions at face value, but may take into account the quality of the explanation when determining how much weight to

give a medical opinion."); *Bogart v. Comm'r of Soc. Sec.*, No. 2:19-cv-0584-KJN, 2020 WL 5535402, at *4 (E.D. Cal. Sept. 15, 2020) (holding that the ALJ did not err in failing to consider "one-page letters" that "merely list plaintiff's diagnoses," "restate some of her subjective symptoms," and "conclude that plaintiff is limited in her ability to carry out daily activities and limited in her ability to work"). It is also not clear whether his statement that Plaintiff is "thought to be struggling with a severe and persistent mental illness" even constituted a diagnosis. AR 1402.

Plaintiff also asserts a dubious argument that the ALJ rejected the April 2019 statement because she misapplied new regulations about which types of medical professionals could offer "medical opinions." Under the new regulations, for claims filed on or after March 27, 2017, licensed ARNPs and physician assistants acting within their scope of practice are considered "medical sources" alongside physicians and licensed psychologists. 20 C.F.R. § 404.1502(a)(7). Had the ALJ's rejection of Holt's April 2019 letter been based exclusively on the nature of his job title—as Plaintiff suggests—then the ALJ would in fact be acting contrary to the regulations. But this theory would only be plausible if the ALJ rejected both the April and May 2019 statements. Because the ALJ willingly considered the substance of ARNP Holt's May 2019 evaluation without reservation, this Court is confident that the ALJ's decision was not guided by a misreading of the regulations. And even if the ALJ's failure to discuss the April 2019 statement was a true misreading of the regulations, any error would have been ultimately harmless considering that the content of the rejected opinion was still largely covered by the May 8, 2019 evaluation.[3] For these reasons, the ALJ properly rejected Holt's April 2019 statement.

---

[3] This Court may affirm an ALJ's decision on harmless error grounds when the error "is inconsequential to the ultimate nondisability determination," or that, despite the legal error, "the

As for ARNP Holt's May 8, 2019 evaluation, Plaintiff objects to the ALJ's finding that the opinion was unpersuasive because it was "largely inconsistent" with other evidence in the record.[4] AR 26. But the ALJ provided specific and legitimate reasons for discounting ARNP Holt's May 2019 opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) ("If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence."). She noted that despite Plaintiff's complaints of persistent symptoms, there were "unremarkable" findings of "coherent memory, intact insight, and intact judgement" which cut against ARNP Holt's findings. AR 26. The ALJ also found that despite concerns about Plaintiff's ability to socially function in the workplace, there were also "unremarkable" findings of "proper orientation, normal speech, and a cooperative attitude." AR 26. Plaintiff suggests that the ALJ erroneously found evidence of Plaintiff's paranoid thoughts, suicidal ideation, and other mental health symptoms "unremarkable." But again, this is a mischaracterization of the ALJ's decision. The ALJ merely found that whatever "remarkable" symptoms ARNP Holt noted were inconsistent with the other evidence in the record.

This is evidenced by ARNP Holt's own report where he describes Plaintiff's behavior as "[c]alm, cooperative, and guarded." AR 449. The ALJ also noted that the investigative report prepared by the Cooperative Disability Investigation Unit ("CDIU") suggested that Plaintiff is capable of doing most activities of daily living like cooking, taking public transit, and caring for

---

agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Treichler*, 775 F.3d at 1099 (internal quotation marks and citations omitted).

[4] The ALJ appears to concede the supportability of ARNP Holt's May 2019 opinion. AR 26 ("As to supportability, Mr. Holt referenced some of her presenting symptoms and the length of his treating relationship with the claimant.").

her pets. AR 26.[5] *See Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) (holding that daily activities inconsistent with the purported severity of symptoms support an adverse credibility determination). An ALJ may discount treating source opinions as unsupported by the record as a whole or by objective medical findings. *Batson*, 359 F.3d at 1195. This Court must defer to the ALJ's conclusions when the evidence before the ALJ is subject to more than one rational interpretation. *Id.* at 1198. While Plaintiff presents an alternative interpretation, the ALJ's rejection of ARNP Holt's opinion represents a rational reading of the record and is supported by substantial evidence. *See id.* at 1193, 1196. Thus, this Court will not disturb the ALJ's finding that ARNP Holt's statements were unpersuasive.

### 2. Dr. Georgia Wilcox, PsyD

Plaintiff asserts that the ALJ erred because she failed to give specific and legitimate reasons for rejecting the opinion of Dr. Georgia Wilcox, PsyD. In a psycho-diagnostic evaluation dated August 4, 2017, Dr. Wilcox diagnosed Plaintiff with major depressive disorder and stated that as of the date of evaluation, she is not capable of participation in the workplace. AR 605–12. Dr. Wilcox noted that adherence to psychotropic medication and regular mental health counseling would improve Plaintiff's symptoms of depression. AR 612.

---

[5] Plaintiff asserts that the ALJ should not have relied on the CDIU report because the investigator violated Plaintiff's Fourth Amendment rights when her home was entered without a warrant. ECF 11 at 11. In civil cases, the exclusionary rule is deployed only in the context of "egregious" Fourth Amendment violations. *Lopez-Rodriguez v. Mukasey*, 536 F.3d 1012, 1018 (9th Cir. 2008). A Fourth Amendment violation is egregious if it is deliberate or if a reasonable officer should have known that the conduct was unconstitutional. *Id.* But here, any potential violation was not egregious because the unconstitutionality of the search was not clearly established as of November 16, 2017—the date of the CDIU visit. Plaintiff cites *Whalen v. McMullen*, 907 F.3d 1139 (9th Cir. 2018), a case where the Court found an unreasonable search under similar facts. But *Whalen* was published after the conduct in question. Contrary to Plaintiff's argument, the fact that *Whalen* was published before the ALJ issued her decision does not bear on this Court's analysis. *Whalen*, 907 F.3d at 1146 (noting that the constitutional right must be "clearly established *at the time of the alleged violation*") (emphasis added). Further, no evidence suggests that the constitutional violation was deliberate.

Plaintiff objects to the ALJ's finding that Dr. Wilcox's evaluation included notable inconsistences with the record at large. AR 25. Specifically, Plaintiff attacks the ALJ's determination "that the mental status examinations in the record were 'largely unremarkable.'" ECF 11 at 14. Plaintiff notes that the record included observations of significant symptoms like anxious appearance, paranoid thoughts, and suicidal ideation. *Id.* This is the same argument Plaintiff deployed with respect to the ALJ's evaluation of ARNP Holt's statements. And it fails for the same reasons. Again, the ALJ was not attempting to ignore Plaintiff's symptoms. She was merely commenting on the inconsistencies within the record at large. And these inconsistences are notably found throughout the record. In contrast to Dr. Wilcox's opinion that Plaintiff could not follow simple commands, Dr. Wilcox's own examination findings show that Plaintiff was "quite able to follow simple three-step commands." AR 611. Further, despite Dr. Wilcox's finding that "[Plaintiff] is lethargic, and she demonstrates difficulty with attention and concentration," AR 612, mental status findings routinely showed Plaintiff was attentive and able to focus, AR 449, 453, 523, 527, 803, 845, 1162, 1169, 1172, 1175, 1185, 1190, 1198, 1404. Additionally, observations from interviewers showed no issues with her ability to concentrate. *See* AR 306.

In sum, while it is true that the record details the many significant symptoms experienced by Plaintiff, the ALJ identified specific and legitimate reasons for rejecting Dr. Wilcox's opinion. *Bayliss*, 427 F.3d at 1216. The ALJ found evidence of satisfactory social functioning as well as "coherent memory, intact insight, and intact judgment." AR 26. The ALJ noted that Dr. Wilcox's opinion could have been impacted by incomplete and inconsistent information provided by Plaintiff. By Plaintiff's own report, "the primary reason . . . she cannot work, is chronic severe pain that is disabling," and not her mental health symptoms. AR 611. Dr. Wilcox

also noted contradictions in Plaintiff's reports of self-harm and trauma. AR 609, 612. Dr. Wilcox

explained that "discrepancies between the various reports provided for review and [Plaintiff's]

self-report today regarding the type and severity of trauma she has experienced" made "it

difficult to determine the degree to which this history is affecting her ability to cope with[] her

present situation." AR 612. This Court cannot disturb an ALJ's opinion simply because Plaintiff

offers a different interpretation of the record. *Batson*, 359 F.3d at 1198 ("[T]he Commissioner's

findings are upheld if supported by inferences reasonably drawn from the record . . . and if

evidence exists to support more than one rational interpretation, we must defer to the

Commissioner's decision."). The ALJ did not err in finding that the Dr. Wilcox's evaluation was

unpersuasive.

### B. The ALJ Did Not Err in Determining that Plaintiff Did Not Meet the Criteria for Fibromyalgia to be Considered a Medically Determinable Impairment

Plaintiff argues that the ALJ committed reversible legal error by failing to find that

fibromyalgia[6] was a medically determinable impairment at step two of the sequential evaluation

process. At step two, an ALJ must evaluate the entire medical record and determine whether a

claimant has any medically determinable impairments, and whether such impairments are

"severe," as defined by the Act. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1521, 416.920(a)(4)(ii),

416.921. An ALJ must evaluate whether a claimant's medically determinable impairments

include fibromyalgia based on the provisions of Social Security Ruling ("SSR") 12-2p. 2012 WL

3104869 (July 25, 2012).

---

[6] Fibromyalgia is "a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue." *Benecke v. Barnhart*, 379 F.3d 587, 589 (9th Cir. 2004).

Under SSR 12-2p, a diagnosis of fibromyalgia is alone insufficient. *Id.* at *2. Instead, fibromyalgia may be deemed a medically determinable impairment only if the evidence "document[s] that [a licensed physician] reviewed the person's medical history and conducted a physical exam."[7] *Id.* Once diagnosed by a licensed physician, the physician must also provide evidence that satisfies one of two sets of diagnostic criteria outlined in Sections II.A. and II.B. *Id.* Section II.B. of SSR 12-2p sets out three factors that must be met: (1) "[a] history of widespread pain"; (2) "[r]epeated manifestations of six or more [fibromyalgia] symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome"; and (3) "[e]vidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded."[8] *Id.* at *3 (footnotes omitted).

This Court holds that the ALJ did not commit error in refusing to find that fibromyalgia was a medically determinable impairment at step two. While the ALJ's decision would have benefitted from additional explanation, the ALJ is ultimately correct that the record "does not contain the requisite evidence." AR 18. Plaintiff points to details in the record including diagnoses of fibromyalgia in the medical evaluations conducted by ARNP Holt and PA-C Brook Birchard. *See, e.g.*, AR 453–54, 515. But Plaintiff fails to appreciate that even if she could establish that ARNP Holt and PA-C Birchard presented evidence sufficient to meet the three prongs of Section II.B., this evidence, alone, would be categorically deficient under SSR 12-2p.

---

[7] A licensed medical or osteopathic doctor is the "only" acceptable medical source who can provide evidence of fibromyalgia as a medically determinable impairment. *Id.* at *2.

[8] This Court omits any discussion of the Section II.A test because it involves diagnostic criteria related to tender points examinations. The record does not include evidence of a tender points examination and Plaintiff appears to concede that this is not at issue since she relies explicitly on the Section II.B test. ECF 15 at 7.

PAGE 14 – OPINION AND ORDER

The text of the regulation is clear; "only" licensed medical or osteopathic doctors can provide evidence establishing fibromyalgia as a medically determinable impairment.[9] *See Neisinger v. Colvin*, No. 2:15-cv-01718-DWC, 2016 WL 2866260, at *3 (W.D. Wash. May 17, 2016) (holding that the requirements of SSR 12-2 were satisfied because the Plaintiff provided evidence from a "licensed physician"). ARNP Holt and PA-C Birchard—by virtue of their job status—do not meet the regulation's definition of a licensed physician. Accordingly, the ALJ did not err in finding that the record did not contain the requisite evidence.

While Plaintiff notes that she was also evaluated by two licensed physicians—Drs. Annemeika Goldring, MD and Alex Kipp, MD—these evaluations also fail to satisfy SSR 12-2p. On July 20, 2017, Dr. Goldring treated Plaintiff during an emergency room visit in which she found that Plaintiff presented with a *history of* fibromyalgia.[10] AR 582–83. While Dr. Goldring noted that Plaintiff was "[p]ositive for myalgias," she stopped short of providing a formal fibromyalgia diagnosis. AR 584. Instead, she stated that it was her "clinical impression" that her symptoms were "most consistent with chronic fibromyalgia exacerbation and depression." *Id.* Similarly, on November 20, 2018, Dr. Kipp saw Plaintiff and listed fibromyalgia as a primary diagnosis. AR 1183. While it is not entirely clear what the purpose of Plaintiff's visit to Dr. Kipp was, it seems that Plaintiff was seeking a change to her pain medication. AR 1181. Dr. Kipp conducted a physical exam and reviewed Plaintiff's medical history. AR 1181–82. However, it does not appear that these factors formed the basis of an independent fibromyalgia diagnosis.

---

[9] This is not to say that other medical providers cannot provide supporting evidence. SSR 12-2p notes that other acceptable medical sources may be relied upon to "evaluate the severity and functional effects of a person's [fibromyalgia]." *Id.* at *4.

[10] Dr. Goldring also treated Plaintiff on September 19, 2017, but it appears to have been for conditions unrelated to fibromyalgia. AR 712. Similarly, on March 13, 2018, Dr. Kipp treated Plaintiff for conditions unrelated to fibromyalgia. AR 1144.

Considering that Dr. Kipp noted that he was deferring to Plaintiff's other medical providers with respect to her medication management, it does not seem that he was involved with Plaintiff's fibromyalgia treatment, or diagnosis. Dr. Kipp also saw Plaintiff on August 1, 2019 and noted that she was experiencing chronic pain. AR 1411. But again, he did not provide an independent fibromyalgia diagnosis and deferred to her other medical providers for management of her medications and care. AR 1413.

An unadorned diagnosis does not equate to a severe impairment, nor does it amount to a disability from which benefits attach. [11] *See Febach v. Colvin*, 580 F. App'x. 530, 531 (9th Cir. 2014); *see also* 20 C.F.R. § 404.1521, 416.921 ("We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)."). Further, the evidence contained in the evaluations conducted by Drs. Goldring and Kipp do not satisfy all three prongs of Section II.B. With respect to the third prong in particular, Plaintiff has failed to show that her doctors ruled out other potential causes of her fibromyalgia symptoms. While it is true that Plaintiff underwent a series of tests and examinations, it is unclear from the record and Plaintiff's briefing which if any of these tests or examinations were used to provide greater diagnostic clarity to the symptoms purportedly attributed to her fibromyalgia. For example, in a visit to Dr. Kipp in November 2018, medical records show that she was screened for diabetes mellitus. AR 1183. But Plaintiff fails to explain if this test had any connection to eliminating diabetes as a potential cause for her fibromyalgia symptoms.

---

[11] Under SSR 12-2p, an independent evaluation is a critical part of the physician's review. The record must affirmatively show that the physician who made the diagnosis had, in fact, "reviewed the [claimant's] medical history" in addition to conducting a physical exam. SSR 12-2p, 2012 WL 3104869, at *2–3 ("When a person alleges [fibromyalgia], longitudinal records reflecting ongoing medical evaluation and treatment from acceptable medical sources are especially helpful in establishing both the existence and severity of the impairment.").

Failure to exclude other potential causes under SSR 12-2p is fatal to Plaintiff's claim. *See, e.g.*, *Isaac C. v. Saul*, No. 2:19-cv-00074-RHW, 2021 WL 1299200, at *5 (W.D. Wash. Apr. 7, 2021) (affirming ALJ decision where the providers who diagnosed Plaintiff did not provide "specific evidence of exclusion of other causes of Plaintiff's pain"). Plaintiff has not established that the requirements of  SSR 12-2p were satisfied. Accordingly, because the bulk of the record contains evidence from medical providers who do not meet the "licensed physician" requirement of SSR 12-2p,[12] and any evidence provided by licensed physicians falls short of satisfying the three prongs of Section II.B., this Court finds that the ALJ did not err.

To the extent that the ALJ did err, any error was harmless because although the ALJ found that fibromyalgia was not a medically determinable impairment, she still discussed Plaintiff's musculoskeletal pain—which Plaintiff asserts is related to her fibromyalgia—during the later steps of the analysis.[13] An error at step two is rendered harmless when the ALJ

---

[12] Even if this Court assumes that ARNP Holt and PA-C Birchard could meet SSR 12-2p's "licensed physician" requirement and provide evidence of fibromyalgia, Plaintiff still fails to establish how evidence from these medical providers satisfy the three prongs of Section II.B. For example, on September 13, 2018, PA-C Birchard noted that he could not *exclude* rheumatic inflammatory condition as a potential cause for her pain. *Id.* at 1157–58. Similarly, it is unclear if mental health conditions were a cause of Plaintiff's pain because according to PA-C Birchard, "[Plaintiff] has resisted the idea that depression and mental health is contributing to her chronic pain and has become frustrated [] with this in the past, refusing to engage in mental health care." AR 1137. Plaintiff has not met her burden and this Court cannot fill the gap by making assumptions about her medical providers' treatment plans.

[13] It would also be an error for the ALJ to simply discount fibromyalgia-related evidence just because it originated from Plaintiff's subjective complaints. The ALJ is correct that agency regulations require that a medically determinable impairment be established by objective medical evidence. AR 18. However, this Court notes that the diagnosis of fibromyalgia "does not rely on X-rays or MRIs." *Revels v. Berryhill*, 874 F.3d 648, 657 (9th Cir. 2017). This is precisely why the "[e]valuation of fibromyalgia under its own SSR is required because of the unique nature of the impairment." *Kaytlin B. v. Comm'r of Soc. Sec. Admin.*, No. 6:19-cv-00727-MK, 2020 WL 5803937, at *3 (D. Or. Sept. 29, 2020). An ALJ errs if she "effectively require[es] objective evidence for a disease that eludes such measurement." *Benecke*, 379 F.3d at 594 (internal quotation marks omitted).

incorporates the functional limitations of that impairment in the subsequent steps of the

sequential analysis. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) ("Even assuming that the

ALJ erred in neglecting to list the [plaintiff's condition] at Step 2, any error was harmless . . .

The ALJ extensively discussed [plaintiff's condition] at Step 4 of the analysis."); *Chrystie M. v.

Comm'r of Soc. Sec. Admin.*, No. 6:19-cv-00782-HZ, 2021 WL 3406303, at *10 (D. Or. Aug. 4,

2021) ("When the ALJ neglects to include a severe impairment at step two, the error is harmless

if the ALJ considers the claimant's functional limitations at steps four and five, including those

caused by the omitted severe impairment.").

When describing Plaintiff's claim at step three, the ALJ stated that "the essence of her

allegations is that due to numerous mental health issues in combination with musculoskeletal

pain, she is unable to engage in full-time, sustained work activity." AR 19. Additionally, when

assessing the evaluation of state agency medical consultant Dr. Susan Moner, MD, the ALJ

found that "despite a history of rather unremarkable physical exam findings as discussed above,

the undersigned affords greater deference to her subjective complaints of musculoskeletal pain

and discomfort, which is consistent with the postural and environmental limitations set forth in

the residual functional capacity." AR 26. The ALJ evaluated the symptoms and limitations

related to chronic pain in her neck, shoulder, and hip/pelvic area. AR 22–23. Based on the record

in this case, it does not appear that a finding of fibromyalgia as a medically determinable illness

substantively affected the ALJ's decision because the ALJ—in the RFC analysis—considered

and accounted for Plaintiff's symptoms that are consistent with a finding of fibromyalgia. *See.*

*Baldwin v. Astrue*, No. ED cv 09–513–PJW, 2010 WL 1946902, at *2 (C.D. Cal. May 10, 2010)

(finding harmless error at step two when the ALJ's RFC analysis considered symptoms

"attributed *in whole or in part* to her fibromyalgia") (emphasis added). Accordingly, because the ALJ considered the musculoskeletal symptoms and limitations in analyzing Plaintiff's RFC, any potential error at stage two was harmless.

## C. The ALJ "De Facto" Reopening of the Prior Administrative Decision Has No Bearing on this Case

Plaintiff argues that the relevant period for this Court's review is the alleged onset of disability date beginning on August 1, 2010—and not May 18, 2016 when ALJ Murgo issued a decision on Plaintiff's prior application. ECF 11 at 8. When a claimant has been denied benefits by an ALJ on a prior application for benefits, that decision is administratively final through the date of the prior decision. *See Chavez v. Bowen*, 844 F.2d 691, 692–93 (9th Cir. 1988). Even so, the prior decision may not carry administrative finality when the ALJ in the present case chooses to revisit the earlier closed time period. "Res judicata does not apply when an ALJ later considers 'on the merits' whether the claimant was disabled during an already-adjudicated period." *Lewis v. Apfel*, 236 F.3d 503, 510 (9th Cir. 2001) (quoting *Lester v. Chater*, 81 F.3d 821, 827 n.3 (9th Cir. 1995).

Here, despite the initial administrative finality of ALJ Murgo's May 18, 2016 decision, the ALJ considered and weighed prior medical evidence such as the 2011 consultative examination from Dr. Kim Webster, MD. AR 26–27. The ALJ also accepted an alleged onset of disability of August 1, 2010 without comment. *E.g.*, AR 18. When an ALJ considers evidence from the already-adjudicated period and accepts a plaintiff's alleged onset date without comment, this amounts to a de facto reopening of the prior ALJ decision.[14] *Lewis*, 236 F.3d at 510. Plaintiff correctly concedes that the ALJ's reopening of the prior decision does not provide

---

[14] Defendant concedes that the ALJ reopened ALJ Murgo's prior decision. ECF 14 at 11.

an independent basis for remand. ECF 15 at 2. As a result, because this Court finds that remand

is not warranted, the reopening of the record does not affect this case.

### CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 17th day of November, 2021.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge